Next matter, number 162503, United States v. Adolfo Leon Garcia-Sierra Thank you. Thank you. I'm going to please the court in the vacuum for Adolfo Leon Garcia-Sierra. I must beg the courts indulgence for my voice, which is abandoning me. I want to focus on two issues, beginning with the sentencing issues. First, the imposition of an enhancement under guideline 3b.1.1c from Mr. Garcia-Sierra can only be the result of a misinterpretation of the guideline. The district court never found and the prosecution never argued that he supervised participants. He organized objects, bails, he had a checklist, he was checking off what is where, but there is no evidence on the record whatsoever, much less a finding that he supervised any other person or participant. Now, in his brief, apparently argues that he recruited and introduced one or two people. There is no evidence that he either recruited those individuals or supervised them. He presented them, he introduced them in a social sense. This is Mauricio, he's going to. But that is the extent of the evidence relied upon to show that he supervised individuals. One thing that is very telling is that the same enhancement that was given to Mr. Garcia-Leon was given to the undisputed top bosses, the general of this conspiracy, as well as the two guys who were ship owners. Now, Mr. Garcia was a transporter, he was so charged in the indictment, he was so described in the PSR, the PSR has no information from which anyone could conclude that he supervised any participant. There is only... Thank you, Ms. Beckel. May I offer a suggestion, because you have limited time, you can of course argue the case however you want, but for my, as far as I'm concerned, you lay out the arguments on the enhancement very, very well. I think we get the issue. We're quite interested in both the overview testimony issue and the 404B issue, if you want to turn to those. Yes, I will. Without, of course, reading the disparity issue, which I understand is difficult, but I think this is a very dramatic illustration. I want to turn to the 404B issue.  The district judge never required the prosecution and never instructed the jury about the special relevance or appropriate purpose for which this evidence was being admitted. Could you help put this in context? Am I correct that the defense in this case was I didn't do it, as opposed to, well, I did the acts, but I didn't know what I was doing? It was just a general denial of the facts. Now, it is true, and the prosecution points out, that Mr. Garcia initially gave a false story that implied that he didn't know what was on the ship that sank, and that false story was invented by the person who got him involved in the conspiracy and testified at trial, Mr. Silvestre. But the defense at trial never said he didn't know, or he had no intent to distribute. It would have been absurd to say he had no intent to distribute, given the quantities of cocaine. But you'd also have to show knowing possession, wouldn't you? Excuse me? Wouldn't the government have to show that he knowingly possessed, and if he's made the claim to the Coast Guard and to the agent that he was just on a boat that sank, and he was picked up from the middle of the ocean, then doesn't the government have a right to try to elicit the fact that he actually, the story of Silvestre was true, and he was on a boat with the cocaine that sank as well? Well, that defense was not used at trial, and the defense knew that Mr. Silvestre was going to testify, and that he made up the story. So in addition to the testimony about subsequent trips, that was a no-go as a defense. The other thing that happened, because there was never a ruling on the proper purpose, and while the prosecution said it was for intent, using this evidence for intent is particularly problematic. This court in Henry affirmed, but said we need to re-look at many. It's an automatic inroad for propensity testimony, and the district court could not and did not make a 403 ruling, because it didn't know the purpose for which it was going to be used. It simply accepted, said that 404B and 403 are both inclusive, not exclusive, and that the laundry list sufficed. I think those are two serious errors of law. I think that it is time for this circuit to clarify, if not overrule many, and that this case provides an appropriate vehicle. In a case like this where there could have been a question about knowledge, with respect to the one that sank, how is the government supposed to predict what the defense might be? Or is it supposed to predict? How does this issue get brought to the court in advance? The issue was brought to the court in advance, certainly not the intent, but the defense sought desperately to obtain a ruling before trial, and it did not get one. The other thing that is very important here is that this was not a prior conviction. This was a three-person mini-trial of a different conspiracy that was presented to the jury. The court never weighed the question of confusion, and I found it very confusing the first time I read this transcript. But the prosecution doesn't have to guess. The court should, must, require an articulation of the purposes when the defense says, wait a minute, judge, I think this is unfairly prejudicial. The court then has a responsibility to make a finding. Well, maybe it is, maybe it isn't. Let's see what they want to use it for. And if it is knowledge or intent, to what extent is this really an issue? In this trial, with three trips, enormous quantities of drugs, a co-conspirator who was the supervisor of Mr. Eselio testified at trial, and given its literal relevance, how prejudicial is it to put before the jury, near the end of the case, a whole other drug conspiracy? May I ask a question about the whole special relevance prong? I looked at the record, I looked at the docket from Puerto Rico, because I could not find in the record submitted with the case, the notice that the government made that it was going to use the 404B, and then the objections by the defendant. And apparently there were two objections made. In the first objection, the defense counsel says, the problem with allowing the proposed 404B evidence is that even though it may comply with the two-step analysis cited by the government related to Rodriguez-Cardona, to prove that this evidence has special probative value that would show intent, preparation, knowledge, or absence of mistake, it does not comply with the elements set forth in Rule 403. And I think you can read that to say that they're not arguing, the defense is not arguing that it doesn't have special relevance, but that it is overly prejudicial. And I read your arguments more toward the special relevance prong. I understand, Judge Dawson, that both points were made, and that the 403 argument was after, my recollection is after, the district court indicated that it thought that that laundry list could be accomplished. So that's my reading. I understand that there was a written motion filed objecting to the 404B as well. Thank you. May it please the court. Caitlin Paulson for the United States. I apologize. Caitlin Paulson for the United States. Going to the 404B issue, the district court did not abuse its discretion in admitting this evidence. 404B permits prior bad acts and not just convictions to prove motive, intent, knowledge, and that's what this evidence was used in this case. Which was it? Because I think that's one of the big problems here, is the prosecution said we're going to submit it to, and then ran off the whole litany of everything in the world it could conceivably be, and then the judge says, well, yes, I'll let it in to, and then just repeated the rule. And we looked through the record, and I can't find anywhere there any indication as to what it was being offered for or what the judge was offering it as to. I hope it meets one of these, and we can argue after the fact. Yes, Your Honor. I'd like to point you to pages 403 to 418 of the appendix. So this is the discussion that the judge has mid-trial. I believe it's on the third day of trial after the witnesses for the charged conspiracy have testified. The judge reaches this 404B issue. It actually takes a substantial part of the afternoon. The judge allows the defense counsel to go and review cases that the government had raised, U.S. v. Garcia. And at that point, the judge specifies that he's admitting the 404B evidence for intent and knowledge. So those are the two stated reasons the district court permits this evidence to come in. And I'd like to note that at this time, when he is making this determination, he only permits the first two witnesses to testify. He withholds his ruling on the third witness. He says that he needs to see what the first two witnesses testify about before he permits the third one. Thank you. That's helpful. Could you now explain how this 70-page diversion into some other case that he wasn't even charged with in this case proved knowledge that's relevant to this case? Just so I understand your question. Let's start with intent. How did it prove intent? How does the 404B evidence prove intent? Yes. So in order to answer this, I will briefly discuss the facts of the 404B evidence, which came in through three witnesses, two agents, and one co-conspirator, Seguro Galvez. The evidence that came in throughout this evidence was that Seguro Galvez purchased 525 kilograms of cocaine from Garcia Sierra. A term of that agreement was that Garcia Sierra would transport that large quantity of cocaine from South America to Puerto Rico. So Garcia Sierra was in charge of moving the cocaine. It also came out at trial that there was a phone call, a recorded phone call, between Garcia Sierra and Seguro Galvez, the co-conspirator, regarding this specific transaction. So how this goes to intent specifically is that, taking a step back, the government, in the charge of conspiracy, has to prove intent for 21 U.S.C. 846 and 963, possession with intent to distribute and intent to bring narcotic into the United States. The government is required to prove evidence on that, and this goes to that intent because it shows that Garcia Sierra not only knew that cocaine was being shipped from South America to Puerto Rico, but that he was selling it himself and that he was transporting it himself. Well, now it sounds like you're talking about knowledge. You're saying he knew that it was being transported. How does it prove intent? It sounds to me like what you're saying is, we're going to prove that he intended to conspire to bring in cocaine on this occasion by pointing out that he did so on another occasion. That's what it sounds like to me. I see that argument, Your Honor. I believe another way to view this is also looking at the defendant's defense at trial and the claims that he raised at that point. Specifically looking at the testimony of the confidential source, Silvestri. Silvestri stated that he started working with the FBI agent. They started working on these operations, which resulted in the ultimate cocaine seizure in Puerto Rico in October 2013. During the cross-examination, the defendant questioned Silvestri, stating that kind of creating this defense that Silvestri was creating this story that he was part of this drug trafficking conspiracy because he was concerned that the FBI agent would find out about his other drug trafficking experiences, which were separate and apart from the charged conspiracy. And then he later on goes to suggest that Silvestri continue to work with the government to make money. At the same time, there's kind of an intertwining secondary defense here. What does this have to do with the 404B issue? Sorry, this is the second defense, which goes to the fact that the defendant did not know what was in the bales that he was shipping. So he claims he was a mere dock worker, a mere sailor, and that he didn't know the content of the bales. So he did not intend to bring cocaine to Puerto Rico because he didn't know that the bales contained cocaine. So you're saying that he affirmatively raised through cross-examination the defense that he didn't know the bales had cocaine, hence you introduced the other act evidence to show that he knew what a bale of cocaine looked like? Not only that he knew what the bale looked like, he knew that the actual substance within the bale was cocaine. And how did the prior act evidence prove that? Because he wasn't involved in the van chase or anywhere near any of the cocaine. Correct, Your Honor, but he was on the opposite end. He was in South America. He was the one who sold the product, and he was the one who shipped the goods to Puerto Rico. And I'd like to also point out that in this case, even if the court determines that the 404B evidence was improperly admitted, it is harmless error because there is more than adequate evidence to support the defendant's convictions in this case based on the text messages from the defendant himself, based on the testimony of the confidential source, and based on the very suspicious circumstances surrounding his high-seas rescue in December 2012. Could I ask, on the 403 analysis, did the court know at the time it let the government go down this road that they were going to be taking it as far as the van crashing into the field? I mean, that seems pretty prejudicial. Can you point me in the record to where he kind of understood the full breadth of the evidence and made his 403 ruling? Your Honor, I'd point you back to that same set of pages, 403 to 418, which is where the district court is making this determination. With respect to whether the district court knew about the van chase, I don't believe it specifically states in those pages he knew about what the agents were testifying to, but I'd like to point out that the agents only testified, both agents testified for less than an hour combined. There was no cross-examination on their testimony, and that the nature of that conspiracy is not more kind of prejudicial than the actual charged conspiracy, where this large kind of group of individuals were shipping multi-ton shipments of cocaine from South America to Puerto Rico, and their ships sinking at sea or catching on fire at sea. The evidence that came in at trial, I believe, was very visual in a lot of respects. Changing subjects slightly, what do you do about the fact, it seems to me, that the overview testimony got a little carried away and started including hearsay evidence, including what Sylvester said, and then basically concluding that Garcia Sierra was a member of the organization. Doesn't that run afoul of the limits we've placed on overview? So, Your Honor, I think it's important with this testimony to take it kind of case by case and address it, but I'd also like to note very briefly that yesterday I did submit the 28-J letter. We saw that, but in that case, the witnesses were not subject. The independent witnesses confirmed the agents, and the independent witnesses, we specifically found, were not subject to any credibility or bias issues. Here, the only confirmation of what the agency says is in the cooperating witness, Sylvester, so you really can't rely on yesterday's case very much. All right. So, if you come back to how you get around hearsay and offering a conclusion at the beginning of the case, pronouncing that the guy's a member of the organization. Yes, Your Honor. So, I would not categorize the agent's testimony as establishing the government's theory, but if I may finish, I think specifically with the reference that you mentioned, how the case agent stated that Garcia Sierra was part of the conspiracy, that can be found in Appendix 76, where the agent is discussing how the investigation got started. I believe the sentence goes something along the lines of, I was informed that two individuals were rescued at sea, and that their story kind of matched the modus operandi of this drug-smuggling conspiracy. With regard to that sentence, the case agent is explaining how the investigation got started, which is permissible agent testimony. Yes, but at page 92, almost 20 pages later, the prosecutor then said, Sylvester was communicating with other members of the conspiracy, and then DeJesus responded, yes, he was communicating with Adolfo Leon Garcia Sierra. So, he specifically identified him as a member of the conspiracy. Yes, Your Honor, and in that instance, even if you are to determine that this is hearsay, Sylvester does take the stand at that point, and he not only explains his communications with Garcia Sierra at that point, he provides the text messages which corroborates his story. But they don't corroborate that part of the story, or explain how they do. Just so I understand, how Sylvester said he was communicating with Garcia Sierra? As a member of the conspiracy. As a member of the conspiracy. The text messages discuss the interactions that the two men had following the December 2012 Coast Guard rescue. At that point, the testimony that came out is that Sylvester and Garcia Sierra were viewed suspiciously by the members of the conspiracy, where the leaders believed that the men had stolen the cocaine, and had come up with the story that they were rescued by the Coast Guard. And so there were a number of exchanges where the leaders of the conspiracy sent individuals to speak with both Sylvester and Garcia Sierra about the story that they told. I think you're going beyond the text messages here. Excuse me? I think you're going beyond the text messages. So the text messages explain, I spoke with so-and-so, I told him the story is real, and the reason why the boat sank is all of our problems. And it's not just me, and it's not just you stealing the cocaine. Then Garcia Sierra says, I want you to also speak with this individual and corroborate my story. So the text messages themselves kind of support this communication between the two men and how they interacted with the leaders of the conspiracy. Unless the court has any further questions. Yes, on the role in the offense enhancement. So what is the evidence that he supervised or managed at least one other person? Yes, Your Honor. So there are a number of instances that the court could have relied on. So I would just like to clarify first that the court did adopt the PSR, and the PSR noted that there was the instance of the October 2013 organizing the shipment. Evidence for this can be found. I apologize. It doesn't go beyond just using the word organized, does it? Which can mean almost anything. In fact, we have at least one case that says organized doesn't tell you whether they supervised a person. What else is there? Yes, Your Honor. But in that instance, he was the, quote, person in charge. Other members of the conspiracy had been told that he was the one organizing the entire shipment, which included at that point over 200 kilograms of cocaine. So this wasn't a one-man operation where he was the one waterproofing and packaging these bales of cocaine. What's the evidence of the number of people that were involved? You say it's not one man. Is it two? Is it three? No, Your Honor. What's the evidence? At various points it is introduced that there are kind of groups of individuals along each part of the conspiracy. So with regard to the specific packaging, if you want to look at appendix approximately page 350 through, sorry, 347 through 353, the evidence that is described there is that the individual, there are individuals who bring the cocaine to the packaging site. At the packaging site it is then packaged, it's waterproofed, and there are nets put around the bales. Then individuals bring the cocaine, not Garcia Sierra, other individuals bring the cocaine to a wooden boat. The wooden boat is then shipped 20 miles out to sea and it's moved to a cargo ship. On the cargo ship it travels most of the way to Puerto Rico, 20 miles off the coast. It's moved to a dinghy in the middle of the night. The dinghy then goes to Puerto Rico. So that's some of the evidence. This is like a large operation. They're shipping a lot of product. Other examples include the defendant introducing another sailor on board the ship in December 2012, and that can be found at 305 to 306. And then just other support for it is that the defendant was a valued member of the conspiracy. Silvestri discusses, and it's corroborated by additional text messages, that the leaders of the conspiracy provide specific funds to bring Garcia Sierra from Puerto Rico back to South America safely, and the other members of the conspiracy are tasked with doing so. So is there any evidence that he supervised another person? Yes, Your Honor. I believe the example of October 2013, where he is the manager of the packaging site, fulfills that enhancement. That's the statement that he organized?  There is a statement. Silvestri explains on 347 to 348 that he was informed by the leaders of the organization that, quote, that the defendant was in charge of, quote, organizing the entire trip, end quote, to transport the cocaine to Puerto Rico. Okay. Thank you. Thank you.